**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ENTERPRISE HOLDINGS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **INJUNCTIVE RELIEF REQUESTED** |
| | ) | |
| **v.** | ) | **Cause No.** |
| | ) | |
| **DAVID KRAMER,** | ) | |
| **Serve: 8002 NW 125th Ter** | ) | |
| **Parkland, FL 33076** | ) | |
| | ) | |
| **Defendant.** | ) | |

**VERIFIED COMPLAINT**

COMES NOW Plaintiff Enterprise Holdings, Inc. ("EHI"), and for its causes of action against Defendant David Kramer, alleges and states as follows:

**INTRODUCTION AND SUMMARY**

1.    In this Verified Complaint, EHI seeks a judgment to collect funds embezzled from it by a former employee of one of its wholly-owned subsidiaries, Defendant, David Kramer, through a fraudulent scheme carried out over the course of at least ten years.  In furtherance of this scheme, Defendant created and submitted countless false invoices made payable to Defendant directly, and caused harm and economic loss to EHI.  Additionally, as Defendant is now trying to remove all of his assets from the reach of EHI, EHI further seeks temporary and preliminary injunctive relief to prohibit Defendant from withdrawing and disposing of the assets in his account under the Enterprise Holdings Retirement Savings Plan (the "Plan").  The assets in this account – though only a small fraction of the embezzled amount – represent the only funds that EHI is aware of that would be available to EHI to recoup its significant losses.  Defendant's

on-going attempt to withdraw these funds would leave EHI without a meaningful remedy for Defendant's fraud and embezzlement.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff, EHI, is a corporation duly formed and existing under the laws of the State of Missouri with its principal place of business in St. Louis County, State of Missouri, within this judicial district.

3.      Defendant Kramer is a citizen of the State of Florida and resides in Broward County, Florida.  Until recently, Defendant was employed by EHI's wholly-owned subsidiary Enterprise Leasing Company of Florida, LLC (referred to herein as the "South Florida Division") (EHI and the South Florida Division are referred to collectively herein as "Enterprise").

4.      This Court has federal question jurisdiction over this action by virtue of 28 U.S.C. § 1331 as this cause of action arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

5.      This Court has supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1367(a), as the claims at issue are so closely related that they form part of the same case or controversy.

6.      This Court further has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that complete diversity of citizenship exists between the parties and the amount in controversy is well in excess of $75,000.  The amount of funds embezzled and fraudulently retained by Defendant well exceeds $75,000.

7.      Defendant is subject to personal jurisdiction in this Court by virtue of, among other things, committing tortious acts directed at and sustained in Missouri and using computer servers and systems housed in Missouri to carry out those tortious acts.

- 2 -

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that the tortious acts and injury to EHI occurred, and are occurring, in the Eastern District of Missouri where EHI maintains its principal place of business.

## FACTS COMMON TO ALL COUNTS

### Defendant's Employment

9.     Enterprise is in the business of providing, *inter alia*, car rental services to customers worldwide.  The South Florida Division is wholly owned by EHI and operates car rental branches for EHI in southern Florida under the Enterprise Rent-A-Car, National Car Rental, and Alamo Rent A Car brands.  EHI is the South Florida Division's sole member.

10.     Defendant began his employment with the South Florida Division in 2002.  In December 2007, Defendant rose to the position of Group Risk Manager, a senior level management position.  The Group Risk Manager role is a position of trust and afforded Defendant significant discretion in the carrying out of his job duties.

11.     As a Group Risk Manager, Defendant's duties were to support and drive Enterprise's risk management practice across the South Florida Division.  Through his work, Defendant was tasked with developing and implementing rental and asset protection best practices designed to protect Enterprise from losses associated with its rental car business.

12.     In the performance of his job duties, Defendant had continuous and regular contact with EHI employees located in Missouri.  He also periodically traveled to St. Louis.  For example, in November 2016 Defendant traveled to St. Louis to assist EHI in the development of a new training program for Enterprise risk managers.

**Defendant's Fraudulent Actions**

13.     One of Defendant's duties as a Group Risk Manager was to review and approve invoices related to claims filed against Enterprise.  For example, if a rental car were towed and placed in storage by the towing company, it would be Defendant's job to review the invoice and approve it for payment in order to retrieve the car.  To do this, Defendant would submit the invoices to the South Florida Division's accounting team, who would then enter it into their payables system for payment.

14.     However, beginning as early as 2010, Defendant began to file fabricated invoices, which did not reflect actual claims against Enterprise and which Defendant represented required payment in cash.  He would use his Enterprise computer and software to create the fake invoices, which would then be filed with the South Florida Division's accounting team for reimbursement. When the funds were disbursed to Defendant, he would cash the check – purportedly to pay the appropriate vendor – but would keep the funds for himself.

15.     Further, Defendant leveraged his knowledge of the South Florida Division's internal controls to avoid detection by creating fraudulent documents using Enterprise's computer systems that appeared, on the surface, to be legitimate.  In fact, Defendant took advantage of a loophole in the South Florida Division's risk management practices that he had helped to create, submitting the invoices in a way designed to avoid any additional oversight or approval.

16.     Over the course of at least ten years, Defendant consistently made and submitted between one and six such fraudulent invoices per month.  Through this scheme, Defendant

fraudulently applied for and accepted an amount in false invoices substantially more than the amount available in Defendant's Plan account at issue here.

17.     As the South Florida Division's sole member, all such wrongly disbursed claim funds directly injured EHI.  Further, all funds from the South Florida Division are swept nightly into a common bank account EHI maintains in Missouri.  Unbeknownst to Enterprise, those deposits were reduced by the amount of Defendant's embezzlements.

18.     In or around May 2020, Enterprise discovered Defendant's extensive history of defrauding and embezzling from EHI and the South Florida Division.  Enterprise launched an investigation into Defendant's invoice submission practices, which involved extensive review and investigation of Enterprise's electronically-stored business records.

19.     The investigation concluded that Defendant had used Enterprise software to generate falsified records, compromising the integrity of Enterprise's business records.  It was further concluded that Defendant's actions became bolder over time, as he submitted more and more false invoices – sometimes as many as six per month in the final year of his employment.

20.     As a part of Enterprise's investigation, Defendant was questioned by EHI's Security and Investigations Manager.  Upon questioning, Defendant admitted to falsifying the invoices and records over a long period of time.

21.     On June 25, 2020, Defendant's employment was terminated.

22.     Upon information and belief, Defendant is currently being investigated by the U.S. Attorney's office for the Eastern District of Missouri in connection with the above pled fraud, taking jurisdiction for the matter on the grounds that Defendant used EHI's information technology systems and mainframe located in Missouri.

## **Defendant's Attempt to Remove Assets**

23.     Over the course of his employment, Defendant accrued more than $250,000 in his Plan account.  These assets include matching contributions and profit sharing contributions made by EHI.

24.     After the discovery of Defendant's large-scale embezzlement of Enterprise funds and the ensuing investigations, Defendant filed in July 2020 a claim with the Plan to withdraw the entirety of his Plan account.

25.     If Defendant's claims are granted, he will receive his entire Plan account.

26.     Section 206 of the Employee Retirement Income Security Act of 1974 (ERISA) bars the alienation or garnishment of pension plan benefits.  Thus, EHI at this time cannot execute on Defendant's Plan benefits.

27.     The Plan account represents the only funds known to EHI that would be accessible to it to recover even a small portion of the total amount embezzled by Defendant over the course of at least ten years.  EHI is not aware of any other accounts held by Defendant from which to recover any of EHI's losses.

28.     Upon information and belief, were Defendant allowed to withdraw the requested funds from the Plan account, he would remove them from EHI's reach, precluding any possible recovery.  Such a withdrawal would cause irreparable harm to EHI because these funds represent the only amount with which Defendant could begin to repay EHI for his extended career of fraud.

29.     EHI therefore filed the Verified Complaint to request, among other relief, a temporary restraining order prohibiting Defendant from withdrawing the funds from the Plan until such time as EHI's claims against Defendant have been heard on the merits.

## COUNT I – FRAUDULENT MISREPRESENTATION

30.     EHI realleges and incorporates as if fully set out herein paragraphs 1 through 29 of its Verified Complaint.

31.     Over the course of at least ten years, Defendant repeatedly and consistently made false representations to Enterprise regarding invoices he submitted to Enterprise's accounting department.

32.     Defendant knew these representations to be false and made them for the sole purpose of defrauding Enterprise for his own financial benefit.

33.     Until May 2020, Enterprise was not aware of the falsity of Defendant's representations, and in fact, Defendant's representations were made in such a way to avoid oversight by Enterprise.  Further, Defendant was a long-time and trusted employee of the South Florida Division.

34.     Relying on and trusting in Defendant's representations, Enterprise disbursed the requested funds to Defendant through its standard payables practices.

35.     Because of Defendant's fraudulent invoices, Enterprise suffered significant damages from improperly paid invoices related to otherwise valid damage claims, valued well in excess of the assets accrued by Defendant under the Plan.

36.     Upon information and belief, the only funds available to Enterprise to recoup any of these substantial losses are located in Defendant's Plan account, which Defendant is attempting to empty.

37.     If Defendant is not prohibited from withdrawing all of the funds of the Plan account, it is highly unlikely that Enterprise will have any other available remedy for Defendant's

fraud.  Therefore, without the requested injunctive relief, Enterprise will be irreparably harmed and no legal remedy would adequately protect Enterprise from the loss of this only potential source of recovery.

38.     Enterprise faces immediate and irreparable harm as a result of the conduct described in the Verified Complaint.  Injunctive relief is necessary to afford Enterprise adequate relief.

39.     The harm to Enterprise if injunctive relief is not afforded substantially outweighs the harm to Defendant if such relief is granted.  As described above, if Defendant is not prohibited from withdrawing these funds, Enterprise will have no available remedy for the significant fraud and losses inflicted upon it.  Defendant, on the other hand, would still be free to control the funds in the account – short of withdrawing them – for the entirety of the period of the injunction.

40.     There is a substantial likelihood that Enterprise will prevail on the merits.

41.     The public interest will be served by granting the requested relief in that public policy supports providing redress for companies who have been defrauded by their employees' misconduct.

WHEREFORE, EHI prays that:

A.      Judgment be entered in EHI's favor awarding EHI its damages in an amount to be proven at trial;

B.      Upon judgment being entered in favor of EHI,  Defendant be ordered to withdraw his Plan benefits and to pay over to EHI all his Plan benefits;

C.      Defendant be temporarily and preliminarily enjoined and restrained from withdrawing any Plan asset or benefit until the Court issues a ruling on the merits of EHI's fraud claim;

D.      EHI's costs of this action be assessed against Defendant; and

E.      EHI be granted such other and further relief as the Court may deem just and proper.

## COUNT II – Conversion

42.     EHI realleges and incorporates as if fully set out herein paragraphs 1 through 41 of its Verified Complaint.

43.     By submitting countless false invoices over a period of more than a decade, Defendant took unauthorized control of a large amount of Enterprise funds, valued well in excess of his benefits under the Plan.

44.     Defendant wrongfully deprived the South Florida Division of these funds, and thereby deprived the South Florida Division's sole member, EHI, of them as well.

45.     The said funds were disbursed to Defendant for the sole purpose of paying certain fake and fraudulent invoices submitted by Defendant to Enterprise.

46.     Defendant diverted the funds to himself for his personal enrichment to the detriment of Enterprise.

47.     Upon information and belief, the only funds available to Enterprise to recoup any of these substantial losses are located in the Plan, which Defendant is attempting to empty.

48.     If Defendant is not prohibited from withdrawing all of the funds in his Plan account, it is highly unlikely that Enterprise will have any other available remedy for Defendant's

conversion.  Therefore, without the requested injunctive relief, Enterprise will be irreparably harmed and no legal remedy would adequately protect Enterprise from the loss of this only potential source of recovery.

49.     Enterprise faces immediate and irreparable harm as a result of the conduct described in the Verified Complaint.  Injunctive relief is necessary to afford Enterprise adequate relief.

50.     The harm to Enterprise if injunctive relief is not afforded substantially outweighs the harm to Defendant if such relief is granted.  As described above, if Defendant is not prohibited from withdrawing these funds, Enterprise will have no available remedy for the significant losses inflicted upon it.  Defendant, on the other hand, would still be free to control the funds in the account – short of withdrawing them – for the entirety of the period of the injunction.

51.     There is a substantial likelihood that Enterprise will prevail on the merits.

52.     The public interest will be served by granting the requested relief in that public policy supports providing redress for companies whose employees embezzle corporate funds.

WHEREFORE, EHI prays that:

A.     Judgment be entered in EHI's favor awarding EHI its damages in an amount to be proven at trial;

B.     Upon judgment being entered in favor of EHI,  Defendant be ordered to withdraw his Plan benefits and to pay over to EHI all his Plan benefits

C.      Defendant be temporarily and preliminarily enjoined and restrained from withdrawing the assets from his Plan account until the Court issues a ruling on the merits of EHI's conversion claim;

D.      EHI's costs of this action be assessed against Defendant; and

E.      EHI be granted such other and further relief as the Court may deem just and proper.

## COUNT III – VIOLATION OF CFAA
(18 U.S.C. § 1030(g))

53.      EHI realleges and incorporates as if fully set out herein paragraphs 1 through 52 of its Verified Complaint.

54.      By using Enterprise's computer systems to create fraudulent invoices and fake business records, Defendant knowingly and intentionally accessed a protected computer used in interstate commerce.

55.      Defendant was not authorized to access Enterprise's information technology infrastructure for the creation and dissemination of fraudulent invoices and business records.

56.      Enterprise has incurred significant losses, not only in the amount of the embezzled funds, but also in the cost of the investigation into Defendant's long-running fraudulent activities and remediation of affected files and systems.

57.      Defendant knowingly and with the intent to defraud exceeded his authorized access to Enterprise's computer systems and furthered his intended fraud by creating fake business records, through which he gained access to funds significantly exceeding in value the assets accrued in Defendant's Plan account.

58.     Defendant's actions recklessly caused damage to the integrity of Enterprise's electronically-stored business records.

WHEREFORE, EHI prays that:

59.     Judgment be entered in EHI's favor awarding EHI its damages in an amount to be proven at trial;

60.     Upon judgment being entered in favor of EHI,  Defendant be ordered to withdraw his Plan benefits and to pay over to EHI all his Plan benefits

61.     Defendant be temporarily and preliminarily enjoined and restrained from withdrawing the assets from his Plan account until the Court issues a ruling on the merits of EHI's CFAA claims;

62.     EHI's costs of this action be assessed against Defendant; and

63.     EHI be granted such other and further relief as the Court may deem just and proper.

WHEREFORE, EHI prays for judgment in its favor and against Defendant for appropriate injunctive relief, attorneys' fees, and any other relief that the Court deems just and proper.

Respectfully submitted,

THOMPSON COBURN LLP


By: ___*/s/ Richard J. Pautler*___
     Richard J. Pautler, #30789
     Colin J. Pajda, # 71115
     One US Bank Plaza, Suite 2700
     St. Louis, Missouri 63101
     (314) 552-6470
     (314) 552-7000 (fax)
     rpautler@thompsoncoburn.com
     cpajda@thompsoncoburn.com

     Attorneys for Plaintiff
     Enterprise Holdings, Inc.

## **VERIFICATION**

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on this 18th day of August 2020.

Roger Van Horn